United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANK LIAO,

                Plaintiff,

     v.

FISHER ASSET MANAGEMENT, LLC, et al.,

                Defendants.

Case No. 24-cv-02036-JST

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: ECF No. 16

Before the Court is Defendant Fisher Asset Management LLC and The Fisher Investments 401(k) Plan's (collectively "Fisher") motion to dismiss.  ECF No. 16.  The Court will grant the motion.

I.       **BACKGROUND**

Plaintiff Frank Liao is a former employee of Fisher.  ECF No. 1 ¶ 7.  He worked for Fisher from October 18, 2004, through July 14, 2006.  *Id.*  As a benefit of his employment, he was a participant in Fisher's 401(k) Plan, a tax-qualified ERISA-regulated defined contribution plan.  *Id.* ¶¶ 4, 7.  Under the Plan, participants may make 401(k) contributions through payroll withholding on a pre-tax basis.  ECF No. 16-1 at 118.  In addition, Fisher matches these contributions up to a set percent by contributing money to the participant's account.  *Id.* at 128–129.  While the income deferred to the Plan by the participant belongs to the participant regardless of whether they remain employed by Fisher, the employer match becomes the property of the employee only after it vests. *Id.* at 136.  A participant's "Vested Interest" in Fisher's contributions is determined based on the participant's years of vesting service.  *Id.* at 35, 136.  For the first two years after Fisher contributes to a participant account, an employee is 0% vested in the employer's matching contribution.  *Id.*  Following three years of vesting service, an employee is 100% vested in

1  matching contributions under the Plan. *Id.* The terms of the Plan provide for forfeiture of

2  unvested employer matches as follows:

3

4  > The Term forfeiture means the amount by which a Participant's
   > Account balance attributable to Employer contributions exceeds his
   > or her Vested Interest in Participant's Account balance attributable to
5  > Employer contributions as of the date elected under Section 3.11.

6  > When Forfeitures Occur.  As elected in the Adoption Agreement, the
   > date upon which a forfeiture occurs is either (1) the earlier of the date
7  > a Participant who Terminated Employment receives a distribution of
   > his or her Vested Interest, or the date the Participant incurs five
8  > consecutive Breaks in Service after Termination of Employment
   > [parenthetical omitted]; or (2) the date a participant incurs five
9  > consecutive Breaks in Vesting Service after Termination of
   > Employment.

10

11  ECF No. 1 ¶ 9.

12          During his employment, Fisher made matching contributions to Liao's account. *Id.* ¶ 7.

13  Liao's employment with Fisher ended in July 2006.  Because he was employed for less than two

14  years, these match contributions had not yet vested. *Id.* Pursuant to Section 3.11 of the Plan,

15  forfeiture occurred on July 14, 2011, after he incurred five consecutive breaks in vesting service

16  after termination of employment. *Id.* ¶ 10.  At that time, the amount totaled approximately

17  $26,0000. *Id.* However, it was not until December 13, 2023, that Fisher directed Schwab, the

18  administrator of the account, to liquidate the unvested employer contributions and their earnings

19  from Liao's account, which had increased to $245,000. *Id.* ¶ 12.  Liao contends that the

20  withdrawal of the post-July 14, 2011 earnings on the unvested employer contributions violated the

21  terms of the Plan and ERISA.  He brought this action asserting: (1) a claim for benefits under the

22  terms of the plan pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty

23  under ERISA § 1132(a)(2) and § 1132(a)(3); and (3) prohibited transaction in violation of ERISA,

24  29 U.S.C. § 1106.

25  **II.     JURISDICTION**

26          The Court has jurisdiction under 28 U.S.C. § 1331.

27  **III.    LEGAL STANDARD**

28          A complaint must contain "a short and plain statement of the claim showing that the

United States District Court
Northern District of California

2

1    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is

2    appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

3    a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th

4    Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a

5    plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

6    *Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain

7    sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

8    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A

9    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

10   the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court

11   must "accept all factual allegations in the complaint as true and construe the pleadings in the light

12   most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

13   However, the Court is not "required to accept as true allegations that are merely conclusory,

14   unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

15   F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

16   **IV.    JUDICIAL NOTICE AND INCORPORATION BY REFERENCE**

17          Fisher requests the Court consider four documents under the incorporation-by-reference

18   doctrine or take judicial notice of those documents: (1) a declaration of Ryan Tikker setting forth

19   the status of certain business records related to Plaintiff Frank Liao and his participation in a

20   401(k) tax-qualified ERISA-regulated defined contribution pension plan; (2) a copy of the Base

21   Plan Document #13 in effect at the time of the alleged ERISA violations; (3) a copy of the

22   Adoption Agreement in effect at the time of the alleged ERISA violations; (4) a copy of the

23   Summary Plan Description in effect at the time of the alleged ERISA violations, that Fisher

24   provides to participants. ECF No. 16-2.

25          "As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling

26   in a Rule 12(b)(6) motion.'" *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011)

27   (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "When 'matters outside

28   the pleading are presented to and not excluded by the court,' the 12(b)(6) motion converts into a

United States District Court
Northern District of California

motion for summary judgment under Rule 56," unless those matters satisfy the "incorporation-by-reference doctrine" or the standard for "judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (quoting Fed. R. Civ. P. 12(d)).   The Ninth Circuit has expressed concern with the practice of "exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage."  *Id.*

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is not subject to reasonable dispute,'" i.e., the fact "is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Id.* at 999 (quoting Fed. R. Evid. 201(b)).  "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Id.* at 1002.  Documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the documents' authenticity . . . is not contested," *Lee*, 250 F.3d at 688 (alteration in original) (quotation marks and citation omitted).

Liao does not dispute[1], and the Court agrees, that the Plan documents, Exhibits A and B, have been incorporated by reference.  *See Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 943 n.1 (9th Cir. 2008).   The remaining documents, however, have not.  Nor are they proper subjects of judicial notice.  *See Khoja*, 899 F.3d at 998 ("judicial notice under Rule 201 permits a court to notice an adjudicative fact … if it is 'generally known' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'")  Accordingly, the Court denies Fisher's request as to Exhibit C and the Tikker Declaration.

---

[1] While Liao agrees that "the Plan document is clearly referenced in the Complaint and forms the basis for [his] claims" and thus the Court can consider the Plan documents under the doctrine of incorporation-by-reference, he contends that "the Plan document cannot be considered . . . in support of [Defendant's] competing (and incorrect) interpretation of the language of the Plan document asserted in their Motion."  ECF No. 23 at 4.  The Court, however, may interpret the Plan terms in determining whether Liao has plausibly stated a claim.  *See Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1084 (N.D. Cal. 2012).

1   **V.      DISCUSSION**

2        **A.      Claim for Benefits**

3        Under 29 U.S.C. § 1132(a)(1)(B), the beneficiary of an ERISA plan may bring a civil

4   action to recover benefits due under the terms of the plan, enforce their rights under the terms of

5   the plan, or clarify their rights to future benefits under the terms of the plan.  29 U.S.C.

6   § 1132(a)(1).  "To plead a violation of the statute, a plaintiff must allege the existence of an

7   ERISA plan and identify the provisions of the plan that entitle them to benefits."  *Doe v. CVS*

8   *Pharmacy, Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020) (internal quotation marks, citation, and

9   alteration omitted).

10        Fisher does not dispute that Liao has adequately alleged the existence of an ERISA Plan.

11   Instead, Fisher contends that Liao has failed to identify a provision of the Plan that entitles him

12   benefits.[2]  Liao points to Sections 1.77 and 3.11(a) of the Plan which state:

13

14            The Term forfeiture means the amount by which a Participant's
             Account balance attributable to Employer contributions exceeds his

15            or her Vested Interest in Participant's Account balance attributable to
             Employer contributions as of the date elected under Section 3.11.

16            When Forfeitures Occur.  As elected in the Adoption Agreement, the

17            date upon which a forfeiture occurs is either (1) the earlier of the date
             a Participant who Terminated Employment receives a distribution of

18            his or her Vested Interest, or the date the Participant incurs five
             consecutive Breaks in Service after Termination of Employment
             [parenthetical omitted]; or (2) the date a participant incurs five

19            consecutive Breaks in Vesting Service after Termination of
             Employment.

20        Liao argues that "these provisions allow the Plan to reclaim, by way of forfeiture, an

21

22   amount from Plan participants' accounts equal to the sum of the unvested employer contributions

23   and the earnings thereon, as calculated on a specific date."  ECF No. 22 at 10.  Because Liao

24   ended his employment with Fisher on July 14, 2006, "[t]he date representing 'five consecutive

25   Breaks in Service after Termination' under section 3.11(a) of the Plan was, therefore, July 14,

26   _____

27   [2] Liao argues that because Fisher informed him after exhaustion of the administrative claim
     process that he could file suit that they have waived their arguments raised in the motion to
     dismiss.  ECF No. 22 at 17–19 (citing *Spinedex Physical Therapy USA Inc. v. United Healthcare*

28   *of Arizona, Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014).  That Fisher recognized Liao had a lawful
     right to challenge their decision does not preclude them from arguing he has failed to state a claim.

United States District Court
Northern District of California

2011." *Id.*  Thus, Liao reasons, "the Plan was entitled to a forfeiture of the unvested employer contributions made to the Plan on Mr. Liao's behalf and to the investment earnings on those contributions (i.e., the Account balance attributable to those Employer contributions as of July 14, 2011," which "totaled approximately $26,000." *Id.* (internal quotation marks, citation, and alteration omitted).  However, he contends "the Plan never had any claim to or right to demand (let alone enforce) a forfeiture of earnings (i.e., any 'account balance attributable to Employer contributions,' in the language of the Plan documents) on the unvested employer contributions after July 14, 2011." *Id.*  In other words, Liao argues that the forfeiture provision did not entitle Fisher to any earnings attributable to the unvested employer contributions after July 14, 2011.

Fisher, on the other hand, argues that these provisions "merely define[] *when* the participant loses the right to continue to accrue an interest in the unvested portion of the participant's Account."  ECF No. 16 at 16 (emphasis in original).  "The Plan is crystal clear that when a participant has less than [three] years of vesting service, they are 0% vested in matching contributions, after [five] consecutive breaks in vesting service" and "[n]o exception is made for interest[] earned on forfeited assets, nor does the Plan state that if Fisher does not immediately liquidate forfeitures the moment they are forfeited, then a participant is entitled to all forfeitures and related earnings." *Id.* at 16–17.

"An ERISA plan is a contract, the interpretation of which is guided by contract principles derived from state law and 'guided by the policies expressed in ERISA and other federal laws.'" *Reg'l Med. Ctr. of San Jose v. WH Adm'rs, Inc.*, No. 5:17-cv-03357-EJD, 2021 WL 4481667, at *5 (N.D. Cal. Sept. 30, 2021) (quoting *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007)).  "Accordingly … terms in an ERISA plan should be interpreted in an ordinary and popular sense as would a person of average intelligence and experience." *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (internal quotation marks, citation, and alteration omitted).  "When disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties.  The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion.'" *Id.* (internal quotation marks and citation omitted).

6

1    Moreover, "[e]ach provision in an agreement should be construed consistently with the entire

2    document such that no provision is rendered nugatory." *Id.*

3         The Court agrees with Fisher that it, rather than Liao, was entitled to the post-2011

4    earnings of the unvested funds under Sections 1.77 and 3.11(a) of the Plan.  These Sections outline

5    when a participant loses the right to continue to accrue an interest in the unvested portion of the

6    participant's Account.  For Liao, this occurred on July 14, 2011, after five consecutive vesting

7    breaks in service.  Thus, on July 14, 2011, Liao forfeited any right to these unvested funds.

8    Nothing in the terms makes an exception for any interest earned on the forfeited assets.  Rather,

9    "[i]t is self-evident that if assets do not belong to an individual, then any earnings on those assets

10   would also not belong to that individual." ECF No. 16 at 17.  This reading is consistent with

11   ERISA's purpose.  *See Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 624 (2d Cir. 2006) ("The

12   aim of ERISA is to make the plaintiffs whole, but not to give them a windfall.").  Accordingly,

13   Liao's claim for benefits under Section 1132(a)(1)(B) fails because he has not identified a

14   provision of the Plan, or any other authority, that entitled him to the post-2011 earnings on the

15   unvested funds.

16                              **B.        Breach of Fiduciary Duty**

17        Liao also brings two claims for breach of fiduciary duty under Sections 1132(a)(2) and

18   1132(a)(3).  Section 1132(a)(2) provides that "[a] civil action may be brought … by a participant,

19   beneficiary or fiduciary for appropriate relief under section 1109 of this title."  Section 1109(a)

20   states that a fiduciary that breaches their duties under ERISA "shall be personally liable to make

21   good to such plan any losses to the plan resulting from each such breach, and to restore to such

22   plan any profits of such fiduciary which have been made through use of assets of the plan by the

23   fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem

24   appropriate."  While this Section "does not provide a remedy for individual injuries distinct from

25   plan injuries" it "does authorize recovery for fiduciary breaches that impair the value of plan

26   assets in a participant's individual account." *LaRue v. DeWolf, Boberg & Assocs., Inc.*, 552 U.S.

27   248, 256 (2008)).  In addition, Section 1132(a)(3) provides that "[a] civil action may be

28   brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which

United States District Court
Northern District of California

violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Both Liao's Section 1132(a)(2) and 1132(a)(3) claims are premised on Fisher's breach of fiduciary duty to administer the "Plan in accordance with the documents and instruments governing the plan" by "forfeiting funds in excess of what the Plan unambiguously authorized." ECF No. 22 at 19, 20 (quoting 29 U.S.C. § 1104(a)(1)(D))[3].  However, as explained above, Fisher did not violate the Plan's terms by forfeiting the earnings on the unvested funds.  Accordingly, Liao has failed to state a claim for breach of fiduciary duty.  *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (finding plaintiffs failed to state a claim for breach of fiduciary duty when defendants complied with the Plan's lawful terms).

## C.    Prohibited Transaction

"ERISA § 406 sets forth certain types of transactions between a plan and other parties that are per se prohibited." *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D. Cal. 2008). Specifically, ERISA prohibits transactions:

> if the fiduciary knows or should know that the transaction constitutes a direct or indirect (A) sale or exchange, or lease, of any property between the plan and a party in interest; (B) lending of money or other extension of credit between the plan and a party in interest; (C) furnishing of goods, services, or facilities between the plan and a party in interest; (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

*Wright*, 360 F.3d at 1100 (quoting 29 U.S.C. § 1106(a)(1)).  Similarly, ERISA prohibits a plan fiduciary from dealing "with the assets of the plan in his own interest or for his own account."  29 U.S.C. § 1106(b)(1).

Liao contends that Fisher's use of the forfeited funds to defray Plan expenses constitutes a prohibited transaction.  ECF No. 1 at 11–12.  Fisher, however, argues that such a redistribution within a plan does not constitute a "transaction" within the meaning of this provision.  ECF No. 16

---

[3] While Liao also alleges Fisher breached the duty of loyalty and prudence, he does not explain how, aside from its failure to follow Plan terms.  ECF No. 22 at 19–23.

United States District Court
Northern District of California

at 21–22.  The Court agrees with Fisher.

In *Lockheed Corporation v. Spink*, the Court considered whether the prohibited transaction provision prevented "an employer from conditioning the receipt of early retirement benefits upon the participants' waiver of employment claims."  517 U.S. 882, 888 (1996).  The Court found it did not, noting that "the surrounding provisions suggest that the payment of benefits is in fact not a 'transaction' in the sense that Congress used that term."  *Id.* at 892–93.  "Section 406(a) prohibits fiduciaries from engaging the plan in the 'sale,' 'exchange,' or 'leasing' of property; the 'lending of money' or 'extension of credit;' the 'furnishing of goods, services, or facilities;' and the 'acquisition . . . of any employer security or employer real property,' with a party in interest." *Id.* at 893 (quoting 29 U.S.C. § 1106(a)).  The Court observed that "[t]hese are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length."  *Id.*  What the transactions identified in § 406(a) "have in common is that they generally involve uses of plan assets that are potentially harmful to the plan." *Id.*  "The payment of benefits conditioned on performance by plan participants cannot reasonably be said to share that characteristic."  *Id.*

In *Wright v. Oregon Metallurgical Corp.*, plan participants challenged defendants' refusal to "amend the Plan to permit its participants to sell a higher percentage of employer securities than the percentage permitted by the Plan's express terms in order to capture the 'premium' generated by the merger."  360 F.3d at 1093.  Plaintiffs argued that defendants' decision not to sell the stock constituted a use of plan assets "by or for the benefit of, a party in interest," specifically the Union. *Id.* at 1101.  The Ninth Circuit noted that plaintiffs "pointed to nothing akin to a 'sale, exchange, or leasing of property, . . . [or] the lending of money or extension of credit.'"  *Id.* (quoting *Lockheed*, 517 U.S. at 893) (alteration in original).  Accordingly, the Court found that the "decision by the [defendants] to *continue* to hold 15% of Plan assets in employer stock was not a 'transaction'" but rather a "lawful decision to remain in full compliance with the explicit language of the Plan's terms."  *Id.* (emphasis in original).

Similarly here, Liao has "pointed to nothing akin to a 'sale, exchange, or leasing of property, …[or] the lending of money or extension of credit."  *Id.* (quoting *Lockheed*, 517 U.S. at

893 (alteration in original).  Instead, he points to a reallocation of funds within the Plan in accordance with the Plan's terms—forfeited funds used to defray Plan expenses, which does not "present a special risk of plan underfunding."  *See Lockheed*, 517 U.S. at 893.  This is not a prohibited transaction under ERISA.  *See Hutchins v. HP, Inc.*, 23-cv-05875-BLF, 2024 WL 3049456, at \*9-10 (N.D. Cal. June 17, 2024) (finding that use of forfeited amounts to provide pension benefits to other employees through use as matching contributions was a reallocation and not a prohibited transaction).  Accordingly, Liao has failed to state a claim for violation of Section 1106 and this claim is also dismissed, with leave to amend.  *See Wright*, 360 F.3d at 1101 (finding plaintiffs failed to state a claim under Section 1106(a)(1) or (b) when they identified no transaction that fell within the Sections).

**CONCLUSION**

For the foregoing reasons, the Court grants Fisher's motion to dismiss, with leave to amend.  Liao may file an amended complaint within 21 days solely to correct the deficiencies identified in this order.  If no amended complaint is filed by that date, the claims dismissed in this order will be dismissed with prejudice.

The case management conference scheduled for October 1, 2024 is vacated.

**IT IS SO ORDERED.**

Dated:  September 30, 2024



_____
JON S. TIGAR
United States District Judge