UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK LIAO,<br><br>        Plaintiff,<br><br>    v.<br><br>FISHER ASSET MANAGEMENT, LLC, et al.,<br><br>        Defendants. | Case No. 24-cv-02036-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 37 |

Before the Court is Defendant Fisher Asset Management LLC and The Fisher Investments 401(k) Plan's (collectively, "Fisher") motion to dismiss. ECF No. 37. The Court will grant the motion.

I.  **BACKGROUND**

Because the facts are well-known to the parties and the Court has summarized the background of this action in detail in its prior order, ECF No. 34, the Court will not repeat them in full here. In sum, Plaintiff Frank Liao worked for Fisher from October 18, 2004, through July 14, 2006, and was a participant in Fisher's 401(k) Plan, a tax-qualified ERISA-regulated defined contribution plan. ECF No. 35 ¶¶ 4, 7. Under the Plan, participants may make 401(k) contributions through payroll withholding on a pre-tax basis. ECF No. 37-1 at 118. In addition, Fisher matches these contributions up to a set percent by contributing money to the participant's account. *Id.* at 128–129. The employer match becomes the property of the employee only after it vests. *Id.* at 136. A participant's "Vested Interest" in Fisher's contributions is determined based on the participant's years of vesting service. *Id.* at 35, 136. For the first two years after Fisher contributes to a participant account, an employee is 0% vested in the employer's matching contribution. *Id.* Following three years of vesting service, an employee is 100% vested in

matching contributions under the Plan. *Id.* The terms of the Plan provide for forfeiture of unvested employer matches as follows:

> The Term forfeiture means the amount by which a Participant's Account balance attributable to Employer contributions exceeds his or her Vested Interest in Participant's Account balance attributable to Employer contributions as of the date elected under Section 3.11.
>
> When Forfeitures Occur. As elected in the Adoption Agreement, the date upon which a forfeiture occurs is either (1) the earlier of the date a Participant who Terminated Employment receives a distribution of his or her Vested Interest, or the date the Participant incurs five consecutive Breaks in Service after Termination of Employment [parenthetical omitted]; or (2) the date a participant incurs five consecutive Breaks in Vesting Service after Termination of Employment.

ECF No. 35 ¶ 9.

During his employment, Fisher made matching contributions to Liao's account. *Id.* ¶ 7. Liao's employment with Fisher ended in July 2006. Because he was employed for less than two years, these match contributions had not yet vested. *Id.* Pursuant to Section 3.11 of the Plan, forfeiture occurred on July 14, 2011, after he incurred five consecutive breaks in vesting service after termination of employment. *Id.* ¶ 12. At that time, the amount totaled approximately $26,0000. *Id.* However, it was not until December 13, 2023, that Fisher directed Schwab, the administrator of the account, to liquidate the unvested employer contributions and their earnings from Liao's account, which had increased to $245,000. *Id.* ¶ 14. Liao contends that the withdrawal of the post-July 14, 2011 earnings on the unvested employer contributions violated the terms of the Plan and ERISA. He brought this action asserting: (1) a claim for benefits under the terms of the plan pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty under ERISA § 1132(a)(2) and § 1132(a)(3); and (3) prohibited transaction in violation of ERISA, 29 U.S.C. § 1106.

The Court previously granted Fisher's motion to dismiss as to all claims. ECF No. 34. Liao has now amended his complaint and brings the same causes of action. ECF No. 35.

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the

2

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

### III.   JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

### IV.   DISCUSSION

#### A.   Claim for Benefits

Under 29 U.S.C. § 1132(a)(1)(B), the beneficiary of an ERISA plan may bring a civil action to recover benefits due under the terms of the plan, enforce their rights under the terms of the plan, or clarify their rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1). "To plead a violation of the statute, a plaintiff must allege the existence of an ERISA plan and identify the provisions of the plan that entitle them to benefits." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020) (internal quotation marks, citation, and alteration omitted).

Liao alleges that Sections 1.14, 1.127, 1.77, 3.11(a), and 3.12 of the Plan entitle him to benefits. The Court already rejected Liao's claim that he was entitled to benefits under Sections

3

1.77 and 3.11(a) in its prior Order, *see* ECF No. 34 at 5–7, so it will not revisit those sections here.

Sections 1.14, 1.127, and 3.12 of the Plan provide, in relevant part:

> The term Annual Additions means the sum of the following amounts credited to a Participant's Account for any Limitation Year: (a) Employer contributions; (b) Employee Contributions; (c) Forfeitures; (d) amounts allocated to an individual medical account, as defined in Code §415(l)(2), which is part of a pension or annuity plan maintained by the Employer; and (e) amounts derived from contributions paid or accrued that are attributable to post-retirement medical benefits, allocated to the separate account of a Key Employee, as defined in Code §419A(d)(3), under a welfare fund, as defined in Code §419(e), maintained by the Employer; and (f) allocations under a simplified employee plan. Annual Additions do not include Rollovers, loan repayments, Catch-up Contributions, repayments of either prior Plan distributions or prior distributions of Mandatory Employee Contributions, direct transfers of contributions from another plan, deductible contributions to a simplified employee pension plan, voluntary deductible contributions, and any Annual Additions in excess of the limitation on Annual Additions set forth in Article 6 of this Plan. Employee and Employer make-up contributions under USERRA received during the current Limitation Year shall be treated as Annual Additions with respect to the Limitation Year to which the make-up contributions are attributable. Excess amounts applied in a Limitation Year to reduce Employer contributions will be considered Annual Additions for such Limitation Year, pursuant to the provisions of Article 6 of this Plan.
>
> Participant's Account. The term Participant's Account means the account which represents the undistributed value of the following amounts which have been allocated to the Plan on behalf of a Participant: (a) Employer contributions; (b) earnings/losses; (c) Forfeitures; and (d) the proceeds of any Policies purchased on the Participant's life under Section 7.2.
>
> Allocation of Earnings and Losses. As of each Valuation Date, amounts in Participants' accounts/sub-accounts which have not been segregated from the general Trust Fund for investment purposes (accounts which have been segregated include any Directed Investment Accounts established under Section 7.4) and which have not been distributed since the prior Valuation Date will have the net income of the Trust Fund that has been earned since the prior Valuation Date allocated in accordance with such rules and procedures that are established by the Administrator and that are applied in a uniform and nondiscriminatory manner based upon the investments of the Trust Fund and the Participants' accounts/sub-accounts to which the net income is allocated. For purposes of this Section, the term "net income" means the net of any interest, dividends, unrealized appreciation and depreciation, capital gains and losses, and investment expenses of the Trust Fund determined on each Valuation Date. However, Participants' accounts and/or sub-accounts which have been segregated from the general Trust Fund for investment purposes (accounts which have been segregated include any Directed Investment Accounts established under Section 7.4) will

> only have the net income earned thereon allocated thereto. Policy dividends or credits will be allocated to the Participant's Account for whose benefit the Policy is held.

Liao argues that reading these three provisions together, the Plan "make[s] clear that all assets in a Participant Account, other than the specific 'amount' calculated as a Forfeiture pursuant to Section 1.77 are the sole property of the Plan participant." ECF No. 43 at 19. Specifically, he contends that Section 1.14 "demonstrates that a Participant's Account is for the benefit of the participant and belongs to the participant," Section 1.127 "permits the temporary housing of a Forfeiture, as that term is defined, in a Participant's Account," and Section 3.12 explains how a Participant's Account is valued in a way that suggests "that earnings on a Forfeiture (as that term is defined by the Plan) are part of a Participant's Account." *Id.* Liao further argues that "Defendants fail to cite a single Plan provision that entitles Defendants to anything more than the defined Forfeiture." ECF No. 43 at 20.

Fisher, on the other hand, argues that none of the new sections cited by Liao provide a participant of the Plan to retain interest on the forfeited funds: Section 1.14 merely defines what constitutes an "annual addition" under the Plan for purposes of calculating the limit for how much an employee may receive from an employer's contributions in a given year. ECF No. 46 at 14–15. Section 1.127 explains that a participant's account may house forfeitures prior to their disbursement to Fisher and says nothing about entitlement to earnings on unvested Fisher contributions, and Section 3.12 of the Plan simply "describes how a participant's account is valued and how earnings are added to the account." *See id.* at 15. Moreover, Fisher adds, it is Liao's "burden to allege the existence of an ERISA plan and identify the provisions of the plan that entitles him to benefits"—not Fisher's burden to cite any provision entitling it to the forfeiture. *Id.* (citing *CVS Pharmacy*, 982 F.3d at 1213).

The Court agrees with Fisher. As the Court previously found, the Plan provides that Liao lost his right to continue to accrue an interest in the unvested portion of the participant's Account on July 14, 2011, after five consecutive vesting breaks in service. *See* ECF No. 34 at 7 (citing Sections 1.77 and 3.11(a) of the Plan). So, on July 14, 2011, Liao forfeited any right to these unvested funds. *See id.* Nothing in the new sections cited the Plaintiffs makes an exception for

5

any interest earned on the forfeited assets. They merely provide descriptions of various aspects of the participant account—none of which addresses the situation here, where Liao unambiguously forfeited the right to all unvested funds. Neither do these provisions change ERISA's purpose to "make the plaintiffs whole, but not to give them a windfall"—which would occur here if the Plan were to give Liao the ability to recover earnings on assets that do not belong to him. *See Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 624 (2d Cir. 2006). Accordingly, Liao's claim for benefits under Section 1132(a)(1)(B) fails because he has not identified a provision of the Plan, or any other authority, that entitled him to the post-2011 earnings on the unvested funds.

### B. Breach of Fiduciary Duty

Liao once again brings two claims for breach of fiduciary duty under Sections 1132(a)(2) and 1132(a)(3). Section 1132(a)(2) provides that "[a] civil action may be brought … by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Section 1109(a) states that a fiduciary that breaches their duties under ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate."

Liao's Section 1132(a)(2) and 1132(a)(3) claims continue to be premised on Fisher's breach of fiduciary duty by "violat[ing] the terms of the Plan by forfeiting funds in excess of what the Plan unambiguously authorized." ECF No. 43 at 23–24.[1] But as the Court previously found and reiterates above, "Fisher did not violate the Plan's terms by forfeiting the earnings on the unvested funds." Liao has thus failed to state a claim for breach of fiduciary duty. *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (finding plaintiffs failed to state a claim for breach of fiduciary duty when defendants complied with the Plan's lawful terms).

### C. Prohibited Transaction

"ERISA § 406 sets forth certain types of transactions between a plan and other parties that

---

[1] Liao has once again failed to explain how Fisher breached the duty of loyalty and prudence aside from its failure to follow Plan terms. *See* ECF No. 43 at 22–24.

are per se prohibited." *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D. Cal. 2008). Specifically, ERISA prohibits transactions:

> if the fiduciary knows or should know that the transaction constitutes a direct or indirect (A) sale or exchange, or lease, of any property between the plan and a party in interest; (B) lending of money or other extension of credit between the plan and a party in interest; (C) furnishing of goods, services, or facilities between the plan and a party in interest; (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

*Wright*, 360 F.3d at 1100 (quoting 29 U.S.C. § 1106(a)(1)). Similarly, ERISA prohibits a plan fiduciary from dealing "with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).

The Court previously held that the "reallocation of funds within the Plan in accordance with the Plan's terms—forfeited funds used to defray Plan expenses . . . is not a prohibited transaction under ERISA." ECF No. 34 at 10 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996) and *Hutchins v. HP, Inc.*, 23-cv-05875-BLF, 2024 WL 3049456, at *9-10 (N.D. Cal. June 17, 2024)).

Liao now alleges that "Fisher, as a party in interest under ERISA, instructed Schwab to liquidate amounts from Plaintiff's participant and account and remit those amounts to Fisher for Fisher's use and benefit." ECF No. 43 at 30 (citing ECF No. 35 ¶ 52).

Liao relies heavily on *Perez-Cruet v. Qualcomm Inc.* to argue that he has stated a prohibited transaction claim because the interest earned on the nonvested contributions constitute an "asset of the plan" under ERISA. *See* ECF No. 43 at 31. In *Perez-Cruet v. Qualcomm Inc.*, the court found that the plaintiff had narrowly stated a claim under 29 U.S.C. § 1106(a)(1)(D) based on allegations that the defendants chose "to put forfeited Plan contributions towards current participants' accounts rather than defraying administrative expenses of the Plan." *Perez-Cruet v. Qualcomm Inc.*, No. 23-CV-1890-BEN (MMP), 2024 WL 2702207, at *1, 5 (S.D. Cal. May 24, 2024), *reconsideration denied*, No. 23-CV-1890-BEN (MMP), 2024 WL 3798391 (S.D. Cal. Aug. 12, 2024).

Here, on the other hand, Liao has not provided sufficient factual allegations as to *how* the

forfeited funds were used at all. Instead, Liao provides only the conclusory statement that the excess funds were "used by Fisher to compensate itself and/or Plan service providers which [sic] at [sic] that time were 'parties in interest.'" *See* ECF No. 35 ¶ 52. The lack of factual detail here makes Liao's claim implausible, especially when he elsewhere in the complaint continues to allege that Fisher used the forfeitures to defray Plan expenses, *see id.* ¶ 51, which both this Court and the *Perez-Cruet* court determined to not be a prohibited transaction.

Accordingly, the Court finds that Liao has not adequately stated a claim that Fisher engaged in a prohibited transaction under 29 U.S.C. § 1106(a)(1).

## CONCLUSION

For the foregoing reasons, the Court grants Fisher's motion to dismiss without leave to amend. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (finding that amendment would be futile where plaintiff was granted leave to amend once and the amended complaint contained the same defects as the prior complaint). The clerk is directed to enter judgment for Fisher and close the case.

**IT IS SO ORDERED.**

Dated: June 16, 2025

JON S. TIGAR
United States District Judge